UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| TOTAL RENAL CARE, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 10-33-ART |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHILDERS OIL COMPANY, et al., | ) | **& ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Disaster strikes. An oil spill contaminates a river and poisons a city's water supply. The environmental calamity affects many property owners and businesses in the city, several of whom sue the oil company responsible for the spill in state court. But one of the businesses harmed by the spill decides to sue the oil company in federal court. Should the federal court dismiss the case because the state court actions arise from the same environmental disaster and involve similar issues? That is the question this case presents.

The defendants, Childers Oil Company and Mountain Rail Properties, filed a motion to dismiss the plaintiff, Total Renal Care's ("TRC"), complaint. R. 17. The defendants urge the Court to abstain from exercising jurisdiction under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because of pending state court actions involving the same incidents from which TRC's claims arise. The defendants also argue that TRC's complaint fails to state a claim upon which relief can be granted. Because the facts of this case do not warrant abstention under *Colorado River* and because TRC's complaint, construed in the light most

favorable to TRC, does not fail to state a claim, the defendants' motion to dismiss will be denied.

## BACKGROUND

On or before November 1, 2008, the defendants dumped sludge from one of their oil plants into a plastic-lined pit located next to the Kentucky River in Whitesburg, Kentucky. R. 1 ¶ 13. Contaminants from the pit seeped into the river and flowed downstream to a drinking water treatment plant operated by Veolia Water. *Id*. ¶ 14. The plant provides water to the residents and businesses of Whitesburg. *Id*. ¶ 7. After workers at the treatment plant noticed a strong smell of gasoline, Veolia Water shut the plant down for several days. *Id*. ¶ 14. Kentucky officials determined that the defendants' sludge pit was the source of the contamination. *Id*. ¶ 16. The state environmental agency issued a consumer advisory to residents of Whitesburg informing them that they should not use water for anything other than flushing. The advisory remained in effect for five days, from November 1 thru November 6, 2008. *Id*. ¶ 17.

TRC owns and operates a dialysis clinic in Whitesburg. *Id*. ¶ 8. Dialysis is a treatment for individuals who experience kidney failure. Dialysis cleans the blood in the patient's body by passing it through a special machine. The process requires a large amount of water, and the water must be pure. Because the water is in nearly direct contact with the patient's blood, any impurities or contamination could be extremely dangerous to a patient's health. *Id*. ¶¶ 9-10. TRC's dialysis clinic relies on water from the Whitesburg plant, which it then processes to further purify. *Id*. ¶ 11. The contamination of the local water supply forced TRC to close its clinic for five days, from November 1 thru November 6, 2008. *Id*. ¶ 25.

As if the residents of Whitesburg had not already been through enough, a diesel fuel

storage tank on the defendants' property began leaking into the river in February 2009, just a few months after the first spill. *Id.* ¶ 21. The diesel fuel flowed downstream, again, contaminated the water in the treatment plant, again, led Kentucky officials to issue a water quality advisory, again, and forced TRC to close its dialysis clinic, again. *Id.* ¶¶ 21-24, 26. This second contamination closed TRC's dialysis clinic for nine days, from February 16 thru February 25, 2009. *Id.* ¶ 26.

TRC filed this action on March 10, 2010. The complaint alleges that the defendants were negligent in causing both contaminations. *Id.* ¶¶ 28-44. TRC seeks compensation for the revenues it lost by not treating patients during the periods it had to close as well as significant expenses associated with cleaning the dialysis equipment in the clinic. *Id.* ¶ 27. TRC also seeks punitive damages.

But TRC's lawsuit is not the only piece of litigation to come out of the two contamination incidents. The spills poisoned an entire city's water supply and damaged property values. Several other plaintiffs have filed lawsuits against the defendants in state court arising out of these same incidents. *See* R. 17, Attach. 2-5. At least four separate actions are currently pending in the Letcher Circuit Court before Special Judge James L. Bowling, Jr.. R. 17, Attach. 1 at 2.

## DISCUSSION

The defendants argue that the Court should dismiss TRC's complaint for two reasons. First, they urge the Court to abstain from hearing TRC's case because parallel proceedings in state court will determine the same issues, and therefore allowing this case to go forward would waste judicial resources and expose the defendants to the possibility of inconsistent judgments. Second, the defendants argue that TRC's complaint should be dismissed for failure to state a

claim because an independent superseding cause—the water treatment plant's failure to remove the contaminants—caused TRC's injuries, and at any rate, TRC's injuries are purely economic, and therefore are barred by the economic loss rule. None of the defendants' arguments are convincing.

I.  *Colorado River* Abstention is Not Warranted

The defendants first ask the Court to take an extraordinary step—to refuse to exercise its constitutionally-vested jurisdiction and disrupt TRC's choice of forum because pending cases in state court involve similar issues. There are certain extraordinary cases in which abstention because of parallel litigation in state courts is appropriate. This case is not one of them.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 816. Despite this obligation, there are certain exceptional circumstances in which a federal court should abstain from hearing a case that is properly before it. These circumstances involve unique interactions between state and federal law and are grounded in "considerations of proper constitutional adjudication and regard for federal-state relations." *Id.* at 817. The Supreme Court has said that abstention is appropriate where a federal case presents a constitutional issue that might be mooted or significantly altered by a state court's construction of state law, *see Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959), where a case presents important questions concerning state public policy and the state courts have not yet authoritatively interpreted a controlling statute, *see Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 31 (1959) (Stewart, J., concurring), and where litigants have invoked federal jurisdiction for the purpose of restraining state criminal proceedings, *see*

4

*Younger v. Harris*, 401 U.S. 37 (1971). In *Colorado River*, the Supreme Court created another category of abstention—where a case in federal court involves substantially the same issues and substantially the same parties as a parallel case in state court. 424 U.S. at 817-21.

The *Colorado River* case was about water rights. Under Colorado law, specialized state courts had authority to adjudicate water disputes. While a suit concerning rights to certain water was pending in state court, the United States instituted a suit in federal court to establish its rights and the rights of certain Native Americans to that same water. 424 U.S. at 805–06. One of the defendants in the state court action impleaded the United States into the state case in the hopes of adjudicating all claims to the same water in that action. *Id.* at 806. The district court then abstained from hearing the suit the United States had instituted because of the parallel state court litigation. *Id.* The Supreme Court held that the district court's abstention was appropriate. *Id.* at 820.

The Court began by emphasizing that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813. The Court noted that the case did not fit into any of its existing abstention doctrines. *Id.* at 817. Nevertheless, the Court upheld the district court's decision not to hear the case. Relying on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," the Court held that, in certain "exceptional" cases, a federal court could decline to hear a case where concurrent state court litigation involves the same parties and the same issues. *Id.* at 817-18. The Court listed a number of factors that inform the analysis, made clear that all of the factors should be weighed together, and concluded that the district court's dismissal in light

5

of the pending state litigation was justified. *Id.* at 818-19. In particular, the Court emphasized that both the state and federal actions concerned rights to the same water. *Id.* at 819-20. Therefore, the possible prejudice from inconsistent verdicts was significant—if the state court and the federal court determined that different parties had rights to the same body of water, there would be a serious problem.

In subsequent cases, the Supreme Court has emphasized that *Colorado River* abstention should be an extraordinary, and extraordinarily rare, occurrence. In *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), the Court held that a district court abused its discretion by staying a suit concerning the arbitrability of a contract because a parallel proceeding in state court between the same parties involved the same issue. *Id.* at 9, 29. The Court cautioned that, when a district court considers the *Colorado River* factors, the "balance [must be] heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16. Even though the state and federal proceedings were parallel—they involved the same parties and the same issue—the Court held that the case did not present the "requisite exceptional circumstances" to justify abstention. *Id.* at 18. Notably, unlike *Colorado River*, the case did not involve competing claims of rights to any property or finite resource. Therefore, there was less potential prejudice from piecemeal litigation or inconsistent verdicts. *Id.* Therefore, *Colorado River* abstention was inappropriate.

The Sixth Circuit has channeled *Colorado River* into a convenient two-step inquiry. In the first step, the district court must determine that the federal and state actions are "parallel." *See Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). If the actions are not

parallel, the inquiry is at an end, and abstention is not appropriate. If the actions are parallel, the court must apply certain factors identified in the *Colorado River* and *Moses H. Cone* decisions to determine whether extraordinary circumstances justifying abstention are present. In this case, both steps of the *Colorado River* inquiry reveal that abstention is not warranted.

First, the state court proceedings that the defendants identify are not parallel to this case. "Suits are parallel if substantially the same parties litigate substantially the same issues." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991). Generally, parallel proceedings involve the *same* plaintiff against the *same* defendant, although the presence of additional parties in one suit but not the other will not necessarily destroy parallelism. *See, e.g.*, *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994 (11th Cir. 2004); *Flint v. A.P. Desanno & Sons*, 234 F. Supp. 2d 506 (E.D. Pa. 2002). But here, TRC is not a party to any of the state court actions at all. Accordingly, none of those actions will vindicate TRC's claims. The pending state actions involve individuals and other businesses who claim some kind of injury as a result of the water contamination. Although one of the state court complaints contains a prayer for class certification, *see* R. 17, Attach. 2 at 5-10, to the Court's knowledge, the state court has not yet certified the class. *See* R. 21 at 5 n.3. And at any rate, TRC's claims share little in common with the claims of the plaintiffs in that case, who are largely property owners seeking damages for the lost use and diminution in value of their property. *See* R. 17, Attach. 2 at 15-16. Because of the unique nature of TRC's damages, it is unlikely that TRC would be included in that class. And although the defendants state that they intend to file a motion joining TRC as an indispensable party in one of the state lawsuits, R. 17, Attach. 1 at

7

11, the mere possibility that TRC may become a party to one of the state lawsuits is hardly sufficient justification for this Court to surrender its jurisdiction and dismiss TRC's complaint.

Of course, the defendants are correct that "exact parallelism is not required." R. 23 at 1 (quoting *Romine*, 160 F.3d at 340). That is why the Sixth Circuit in *Romine* found that class actions in state and federal court involving coextensive plaintiff classes, advancing identical theories of recovery, and seeking the same relief were parallel, even though there were different named class representatives in each suit. 160 F.3d at 340. *Romine* recognized that the named class representatives are more or less fungible, but if the underlying classes themselves are coextensive, in reality the lawsuits seek to vindicate the same interests. Here, in contrast, TRC's interests are totally unrepresented in any of the state court actions.

Besides the incongruity in parties, this case and the state cases are not parallel because they involve different issues. It is true that *some* of the issues will be the same. The purported damages in the state cases and this case all stem from the two times the defendants allegedly released pollutants into the Kentucky River. The defendants' negligence will be a common issue in both sets of proceedings. There may also be overlapping questions of causation. But the cases will diverge substantially when it comes to damages. TRC, after all, runs a unique business, and the oil spills harmed it in a unique way. The damages that TRC suffered are very different from the damages that the property owners in the state cases suffered. Evaluating TRC's claim may require evidence about the dialysis process, how the specialized machines used in dialysis operate, what effects introducing contaminants into the water used during dialysis can have on patients, whether TRC could have mitigated its damages by utilizing more sophisticated on-site

8

purification systems, and a number of other issues that are simply inapplicable to the claims pending in state court.

In other words, just because this case and the state cases grow out of the same general event does not mean that they are parallel. Consider this example: A mechanic negligently cuts the brake line in a car he is repairing. The car owner, unaware of the danger, drives the car home from the shop. When she tries to stop at a red light, the brakes fail. She swerves off the road and onto a golf course, tearing-up the 18th green. She careens through the golf course and into a hospital parking lot, where she runs over a patient in a wheelchair. The car finally comes to a stop when it plows into an antique shop, shattering several Ming dynasty vases and a baroque chandelier. There are four victims in this sad tale—the golf course owner, the hospital patient, the proprietor of the antique shop, and the woman driving the car. All of their injuries sprung from the mechanic's negligence. To recover against the mechanic, each victim will have to prove that the mechanic was negligent. But if the golf course owner and the hospital patient sue the mechanic in state court, could a federal court really abstain from hearing the antique shop proprietor's case simply because some of the issues will be the same as those involved in the state case? It would be preposterous for a federal court to abstain under *Colorado River* in this situation. Yet this story is not far removed from what the defendants ask the Court to do in this case. The defendants' alleged negligent acts harmed many different parties. Some of those parties chose to bring actions in state court. TRC chose to bring its action in federal court. TRC is not a party to any of the state court actions, and its lawsuit will require consideration of several unique issues. Therefore, this action and the state court actions are not parallel. For this reason

9

alone, abstention is inappropriate.

But even if the actions were parallel, applying the *Colorado River* factors reveals that this is not one of the extraordinary cases that would justify abstention. There are eight factors for the Court to consider in determining whether extraordinary circumstances justifying abstention are present. Those factors are:

> (1) whether the state court has assumed jurisdiction over any res or property;
>
> (2) whether the federal forum is less convenient to the parties;
>
> (3) avoidance of piecemeal litigation;
>
> (4) the order in which jurisdiction was obtained;
>
> (5) whether the source of governing law is state or federal;
>
> (6) the adequacy of the state court action to protect the federal plaintiff's rights;
>
> (7) the relative progress of the state and federal proceedings; and
>
> (8) the presence or absence of concurrent jurisdiction.

*Romine*, 160 F.3d at 340-41. These factors are not a "mechanical checklist." *Id.* at 341. Rather, the Court should balance all of them to decide whether *Colorado River* abstention is appropriate. But the balancing always starts with a heavy thumb on the scales in favor of exercising jurisdiction. *See Moses H. Cone*, 460 U.S. at 16. There must be an extraordinarily compelling reason for the Court to shunt its constitutionally-vested jurisdiction and disrupt the plaintiff's choice of forum.

The Court need not walk through each and every factor in this opinion. It is true that the state court actions were initiated first, that those actions have progressed further than this action,

and that state negligence law will govern all of the actions. And the federal courthouse may be slightly further away from Whitesburg than the state court.[1] R. 17, Attach. 1 at 6. But the most important factor—indeed, the "consideration that was paramount in *Colorado River* itself," *Moses H. Cone*, 460 U.S. at 19—does not urge abstention in this case. That element is the possible danger from piecemeal litigation. It is true, as the defendants suggest, that the defendants could face inconsistent verdicts. R. 17, Attach. 1 at 7. They could be found liable in state court and not liable in federal court, or vice versa. But that is not really the danger that *Colorado River* was concerned about. In *Colorado River*, the state and federal litigation both concerned rights to the *same water*. If the state court held that the plaintiffs were entitled to the water but the federal court held that the defendants were entitled to the same water, there would be a serious problem. Avoiding that intractable situation was the primary impetus behind the federal court's abstention in *Colorado River*. The possible danger from piecemeal litigation here is much less concerning. Therefore, weighing all of the factors, this case is not one of those extraordinary cases in which *Colorado River* abstention is appropriate.

## II. TRC's Complaint does not Fail to State a Claim

The defendants also urge the Court to dismiss TRC's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because it fails to state a claim upon which relief can be granted. The defendants make two arguments: (1) the water treatment plant's failure to remove the contaminants from the water is a superseding cause that absolves them from liability, and (2)

---

[1] Although, this distance is clearly not too great a burden for the defendants. After all, they tried to remove one of the state court actions to federal court themselves, but it was remanded for lack of subject matter jurisdiction. *See* R. 17, Attach. 6.

the "economic loss rule" bars TRC's claims. Both arguments fail.

### A. Superseding Cause

After the defendants contaminated the water in the Kentucky River, the water flowed down to Whitesburg, where it passed through a water treatment plant before being distributed to residents and businesses, including TRC. The defendants argue that the water treatment plant had a duty to remove any contaminants from the water, and therefore the plant's failure to remove the contaminants that the defendants introduced into the river is a superseding act of negligence that absolves them of liability. This argument may or may not ultimately be a viable defense in this action. But, in order for the Court to grant the defendants' motion to dismiss on this ground, it must be apparent, *as a matter of law*, that the water treatment plant's failure to remove the contaminants from the water was a superseding cause of TRC's damages. In other words, the Court must determine, after accepting all of TRC's factual allegations as true and construing the complaint liberally in TRC's favor, that TRC "undoubtedly can prove no set of facts in support of [its] claims that would entitle relief." *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). The Court cannot make that determination at this time.

Under Kentucky law, there is a difference between a superseding cause—which absolves the original tortfeasor of liability—and an intervening cause—which does not. *See NKC Hospitals, Inc. v. Anthony*, 849 S.W.2d 564, 568 (Ky. Ct. App. 1993) ("A superseding cause is an intervening independent force; however, an intervening cause is not necessarily a superseding cause. [I]f the injury is reasonably foreseeable from the view of the original actor, then the other factors causing to bring about the injury are not a superseding cause."). This is how the

distinction works: X is negligent. Y then commits another act of negligence. Finally, Z is injured. If Z's injury is still a foreseeable result of X's negligence—if X's negligence is a "substantial factor in bringing about the harm," *id*. (citing *Deutsch v. Shein*, 597 S.W.2d 141 (Ky. 1980))—then Y's negligence will not absolve X of liability. Y's negligence is an intervening cause, not a superseding cause. In contrast, if Y's negligence is an independent force that injures Z in a manner that was not foreseeable to X, Y's negligence is a superseding cause, and it releases X from liability. Kentucky courts have articulated a six-part test for identifying a superseding cause. *See id.* In their briefs, the parties debate back and forth about whether the water treatment plant's failure to remove the contaminants from the fulfills all six elements. *See* R. 17, Attach. 1 at 14-16; R. 21 at 7-9. What is apparent to the Court at this stage is that, construing TRC's complaint in its favor and accepting all of its factual allegations as true, the Court cannot say, as a matter of law, that the water treatment plant's failure to remove the contaminants was a superseding cause of TRC's injuries.

And at any rate, it is not clear from the face of TRC's complaint that the water treatment plant was negligent at all. Therefore, this issue is best left to the jury. It is true, as the defendants note, that the Kentucky Supreme Court has said that "[t]he question of whether an undisputed act or circumstance is a superseding cause is a legal issue for the court to resolve and not a factual matter for the jury." R. 17, Attach. 1 at 12 (quoting *Fryman v. Harrison*, 896 S.W.2d 908, 911 (Ky. 1995)). But that is only true, as the quotation suggests, when the superseding cause is indeed *undisputed*. In *Fryman*, the issue was whether a jailer could be held liable for an assault committed by a prisoner that he negligently released. The Kentucky Supreme Court held that the

13

prisoner's assault itself was a superseding cause that cut-off the jailer's liability. *Fryman*, 896 S.W.2d at 911. But in that case "[t]here was no dispute that the claimed act of negligence or the assault actually occurred. Thus the issue was not a mixed question of law and fact." *Id.* Here, in contrast, it is not undisputed that the water treatment plant was negligent. Would a reasonable and prudent water plant have been able to remove all of the contaminants from the water supply? Should a well-run water plant serving a city the size of Whitesburg have had equipment to detect and separate oil and diesel fuel from river water? Was it foreseeable to the defendants that, if they released toxins into the Kentucky River, the water treatment plant would not be able to remove all of the contaminants? These are questions that are necessary to a determination that the water treatment plant was negligent and that its negligence was a superseding cause of TRC's injuries. But these questions cannot be answered at this stage of the proceedings, when the Court is required to "construe the complaint in the light most favorable to the plaintiff [and] accept all of the complaint's factual allegations as true." *Jelovsek*, 545 F.3d at 434.

Other courts have recognized that determining whether a subsequent act of possible negligence that contributes to a plaintiff's injuries absolves the original tortfeasor from liability is a difficult question and have refused to grant motions to dismiss on that ground. *See, e.g.*, *Davis v. Dallas County, Tex.*, 541 F. Supp. 2d 844, 855-56 (N.D. Tex. 2008); *Herman v. Welland Chemical, Ltd.*, 580 F. Supp. 823 (E.D. Pa. 1984). Because, at this stage of the proceedings, the Court cannot say as a matter of law that the water plant's failure to remove the contaminants from the water was a superseding act of negligence that cuts-off the defendants' liability entirely, the defendants' motion to dismiss on this ground will be denied.

### B. Economic Loss Rule

Finally, the defendants argue that the Court should dismiss TRC's complaint because its claims are barred by the "economic loss rule." R. 17, Attach. 1 at 17. But the defendants provide very little authority in their brief establishing that the economic loss rule is part of Kentucky law, and absolutely no authority indicating that Kentucky courts would apply the economic loss rule to bar TRC's claims in this case. Therefore, the defendant's motion to dismiss on this ground will also be denied.

The economic loss rule is a judicially-created doctrine that first developed in products liability cases. *See Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 583-84 (Ky. 2004) (Keller, J., concurring). The case that is popularly believed to be the genesis of the economic loss rule is *Seely v. White Motor Co.*, 403 P.2d 145 (Cal. 1965), which involved a defective truck. Some of the goods that the plaintiff transported using the truck were damaged, and the plaintiff lost substantial profits while the truck was out of commission for repairs. The plaintiff sued the truck manufacturer seeking compensation for both the damaged products and his lost profits. The California Supreme Court held that the plaintiff could recover for the damaged goods but not for the lost profits. *Id.* at 151. From *Seely*, the rule took hold in other states. Today, "[i]n its broadest formulation, the economic loss rule prohibits tort recovery in negligence or products liability absent physical injury to a proprietary interest." *Presnell Constr. Managers,* 134 S.W.3d at 583-84 (Keller, J., concurring). The defendants ask the Court to apply the economic loss rule and hold that it bars TRC's claims for lost profits as a result of its having to close while the city's water was contaminated.

15

In order for the Court grant the defendants' motion to dismiss TRC's claims of economic injury on this ground, the defendants must provide legal authority establishing that the economic loss rule is part of Kentucky law and that Kentucky courts either have applied or would apply the rule to bar claims similar to TRC's. The defendants have not done so. First, the defendants provide only the most bare legal authority establishing that the economic loss rule is part of Kentucky law at all. All the defendants can muster in their brief is a quote from a Kentucky Supreme Court case that they claim "implicitly recognized" the rule and a quote from a concurring opinion by Justice Keller in *Presnell Construction Managers*. But Justice Keller acknowledges in that opinion that "no Kentucky appellate decision has ever used the specific phrase, 'economic loss rule,' much less indicated its approval or adoption of the rule." *Id*. at 585-86. Indeed, in 1995 the United States District Court for the Western District of Kentucky certified the question of whether the economic loss rule is part of Kentucky law to the Kentucky Supreme Court. *Bowling Green Mun. Utilities v. Thomasson Lumber Co.*, 902 F. Supp. 134, 135-36 (W.D. Ky. 1995). The Kentucky Supreme Court refused to answer the question at that time, and it does not appear that there has been any guidance since.

But even if the Court concludes that the economic loss rule is part of Kentucky law, extending it to bar TRC's claims in this case is a big stretch. As the *Thomasson Lumber* court explained, "[t]he economic loss rule applies only in a commercial context." *Id.* at 136. "The crux of the doctrine is . . . the premise that economic interests are protected, if at all, by contract principles, rather than tort principles." *Presnell Constr. Managers,* 134 S.W.3d at 583-84 (Keller, J., concurring). The policy rationale behind the rule is that a manufacturer who sells

16

products in the stream of commerce should not face extraordinary liability for lost business and other economic injuries caused by a defective product unless a warranty or contract specifically covers such losses. For example, if Ben & Jerry's buys a refrigerated delivery truck and the truck malfunctions, causing 10,000 pints of Cherry Garcia ice cream to melt, Ben & Jerry's would be able to recover damages for the lost ice cream from the truck's manufacturer. But if the truck is out of commission for two weeks for repairs, the economic loss rule would prohibit Ben & Jerry's from recovering the lost profits it would have made from the truck's deliveries during that period unless specifically provided for in a warranty. In this respect, the economic loss rule encourages parties to contemplate and cover economic losses in the terms of a warranty or contract.

But this central rationale of the economic loss rule loses its force when there is no contractual relationship between the parties. In this case, TRC has no contractual relationship with the defendants. The defendants did not sell TRC any defective products. Indeed, the first interaction between the parties was when the defendants allegedly contaminated TRC's water supply. Applying the doctrine that "economic interests are protected, if at all, by contract principles, rather than tort principles," *id.*, to the non-contractual relationship between TRC and the defendants is to say, effectively, that TRC's economic interests are entirely unprotected. That would be a strange result indeed. Because Kentucky courts have not addressed this precise question before—whether the economic loss rule applies in the absence of a contractual relationship—it is up to the Court to "determine the path that state [law] would follow." *Overstreet v. Norden Labs, Inc.* 669 F.2d 1286, 1290 (6th Cir. 1982). But the defendants have

provided absolutely no legal authority from which the Court could predict that Kentucky courts would apply the economic loss rule where there is no pre-existing contractual relationship between the parties. Indeed, the defendants have not cited to a single case from *any* jurisdiction applying the economic loss rule to a situation in which the parties did not have a pre-existing contractual relationship. It is not the Court's responsibility to troll through the annals of Kentucky law in search of legal authority that the parties have not provided. And, in any event, the Courts trolling supplied nothing to support the defendants' position. Therefore, the defendants' motion to dismiss on this ground will be denied.

## CONCLUSION

For these reasons, it is **ORDERED** that the defendants' motion to dismiss, R. 17, is **DENIED**.

This the 28th day of September, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge